**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles W. SMITH,**
**Defendant-Appellant.**

Nos. 74–2936, 74–2937.

United States Court of Appeals,
Ninth Circuit.

July 2, 1975.

Rogers M. Ikenaga (argued), Honolulu, Hawaii, for defendant-appellant.

Kirby W. Patterson, U. S. Atty. (argued), Honolulu, Hawaii, for plaintiff-appellee.

## OPINION

Before BARNES, KILKENNY and GOODWIN, Circuit Judges.

BARNES, Circuit Judge:

These are two appeals by the same appellant from his two jury convictions

in two separate trials, the first (No. 74–2936) from a jury verdict on one count of conducting illegal gambling (18 U.S.C. § 1955), and the second (No. 74–2937) from a jury verdict convicting him on three counts—Count I charging a conspiracy with five other persons on August 12, 1973, to distribute heroin (21 U.S.C. § 846); Count III charging the unlawful use of a telephone to facilitate a conspiracy to distribute heroin on August 12, 1973 (21 U.S.C. § 843(b)), and Count VII charging the wilful use of a telephone to facilitate the distribution of marihuana (21 U.S.C. § 843(b)). Appellant was sentenced on each count to concurrent sentences, the longest being 8 years on Count I of 74–2937.

Appellant urges on each appeal: A. That the requirements of 18 U.S.C. § 2518(1)(c) and (3)(c) were not met by the government before obtaining the court's order for the wire taps; B. that the statements of alleged joint co-conspirators or participants were not admissible against appellant because the conspiracy and joint venture were not proven by other testimony; C. the insufficiency of the evidence to convict; and D. (in No. 74–2937) error in the admission of an expert's testimony as to the meaning of certain language used by the defendant during phone calls, and particularly in his August 12, 1973, recorded conversation with co-defendant Gordon Tadashi Yamashiro.

A. We consider each of appellant's arguments. We hold that the requirements of 18 U.S.C. § 2518(1)(c) and (3)(c) were fully complied with by the government.

■ We recognize that Congress in order to prevent abuse by government agents, laid down strict rules for the obtaining of judicial approval before telephone interception would be permitted. It was the Congressional intent to restrict wire taps to those that were not only reasonable but necessary. *United States v. Perillo,* 333 F.Supp. 914, 921 (D. Delaware 1971). Obviously, however, considerable discretion rests with the judge to whom the application for permission to wire tap is made.

On the wire taps relating to No. 74–2936, Judge Samuel P. King was satisfied with the several showings made to him by affidavits and ordered the original taps by several orders, each supported by examination of new affidavits which had been filed.

Later when Judge Pence issued on August 1, 1973, the orders permitting wire taps relative to the subsequent prosecution presently before us on appeal, No. 74–2937, Judge Pence had before him not only a 26-page affidavit in support thereof, but had heard other testimony under oath, which led him to make findings on probable cause, limited the order to 20 days or less if successful, and required reports by the government at the end of 5, 10 and 15 days. This order was extended, upon proper showing, on August 23, 1973, based upon a further 38 page affidavit, covering the information gathered by surveillance and wire taps in which appellant Smith figures prominently.

■■ Congress, in its wisdom, did not attempt to require "specific" or "all possible" investigative techniques before orders for wire taps could be issued. As *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341 (1974), states—wire tap "procedures were not to be routinely employed as the initial step in criminal investigation," but it is equally true "that the statute does not require the government to use a wire tap only as a last resort." *United States v. Kerrigan,* 514 F.2d 35 (9th Cir. 1975); *United States v. Staino,* 358 F.Supp. 852, 856–7 (E.D. Pa. 1973).

■ We find no merit in appellant's objection to the procedure by which the wire taps were authorized.

B. We hold that the acts and declarations of the co-conspirators and joint venturers were admissible.

■ Obviously, there must be independent evidence of a conspiracy or a joint venture, and of the defendant's

participation in it, before the extrajudicial declarations of a co-conspirator or joint participant can be considered by the trier of fact against the defendant. *Carbo v. United States,* 314 F.2d 718, 735, *et seq.* (9th Cir. 1973); *United States v. Ushakow,* 474 F.2d 1244 (9th Cir. 1973). But this does not mean that either all evidence of the existence of the conspiracy or joint venture, or all evidence of the defendant's participation in it, must be first introduced into evidence before the extrajudicial statements can be presented to the jury. They may be introduced later on during the trial, but must be introduced before the trier of fact—here, the jury—acts on the evidence.

It has been held that the order of the admission of proof is within the discretion of the trial court and that consequently it is not reversible error if acts or declarations by co-conspirators are admitted before the existence of the conspiracy is established by independent evidence. *United States v. Knight,* 416 F.2d 1181, 1185–86 (9th Cir. 1969).

The August 12 conversation, No. 668, in which the defendant-appellant spoke with co-defendant Gordon Yamashiro, clearly indicates the defendant-appellant's involvement, exclusive of any other wire tap evidence containing declarations of the defendant-appellant's co-conspirators made in furtherance of the conspiracy and during its pendency. The information already before the court at the hearing of the motions to suppress disclosed the totality of the Government's evidence against defendant-appellant to the judge.

Of course, the trier of fact must first determine the existence of a conspiracy, before it passes on the defendant's alleged participation in it.

In compliance with the dictates of *United States v. Calarco,* 424 F.2d 657, 660 (2nd Cir. 1970); *United States v. Geaney,* 417 F.2d 1116, 1120 (2nd Cir. 1969); and *United States v. Ragland,* 375 F.2d 471, 477 (2nd Cir. 1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 860, 19

L.Ed.2d 987 (1968), concerning the necessity that evidence *aliunde* of the defendant's guilt be considered by the jury before the acts and declarations of co-conspirators, Judge Pence, after concluding in his own mind that such proof was in evidence, put the issue to the jury for consideration. The court's very first instruction charges in pertinent part:

"   .   .   . Thus you must determine, solely from the conversations numbered 65, 178, 377, 436, 688 and 1267, whether or not the government as [sic] proved beyond a reasonable doubt that Smith was in fact a participant in a conspiracy to violate the laws of the United States regulating the possession and distribution of heroin. Unless you first so find, you must acquit the defendant as to Count I because you cannot consider any of the other conversations on the tapes between any of the alleged co-conspirators, Inoue, Rogers, Oshima, and Rodriguez, or any other evidence in this case until you have first been convinced beyond a reasonable doubt that a conspiracy, as alleged, did exist between defendant Smith and Yamashiro. If you find that such a conspiracy did exist, then you may consider any or all of the evidence in the case as you may find it relates thereto." (C. T. 58).

This instruction adequately defines the issue, the procedure necessary to resolve it and the alternative conclusions that the jury might reach depending upon their findings. Compare *United States v. Ushakow,* 474 F.2d 1244, 1245 (9th Cir. 1973).

There was sufficient independent evidence of a joint venture in No. 74–2936 to allow the trier of fact to consider the statements of the alleged joint venturers and that the Court's instruction on this matter was adequate.

We quote with approval from the Government's Brief:

"Early in the trial (Tr. 7), the court's attention was called to the case of *United States v. Ushakow,* 474 F.2d

1244 (C.A.), where it was said at page 1245:

'As with its twin brother conspiracy, the trier of fact first must determine the existence of the joint venture as a prerequisite foundation to the admission of any statements against the accused. Here the question was presented to the jury, but the trial court neglected to instruct that the joint venture must be proven beyond a reasonable doubt.'

Here the court followed the *Ushakow* admonition in its charge (Tr. 237–239):

'Now in connection with the evidence in this case and the proof of the government, before—now listen carefully to this because it's very important: Before you can consider any other evidence in this case, you must first determine whether or not the government has proved to you and your satisfaction beyond a reasonable doubt that the words in the recorded conversations of November 16, 1972, at, I think, 9:09 P.M. and one on December 2nd, 1972, at 11:18 a. m.—that those words on those recordings were in fact spoken by Nobuhara and the Defendant Charles William Smith.

'Now it has been sitpulated [sic] that Nobuhara was one of the speakers. It has also been stipulated that the call of November 16th was an outgoing call from Nobuhara to a telephone number listed under the name of Peggy C. Smith at 3950 Ala Ilima Place, Apartment 303, in Honolulu. It has been also stipulated that Defendant Charles William Smith resided at the same address during the period November 11th to December 17th 1972. Now William Dickson has testified that the voice in each of these two tapes was that of the Defendant Charles William Smith. So, if you find from that evidence that you are satisfied beyond a reasonable doubt that Smith spoke to Nobuhara as recorded, then and then only may you consider the contents of those two conversations.

'Now what I've said there in simple effect is: If you don't believe that that's Smith's voice, then you can't consider the contents and you must right then stop. If you aren't convinced beyond a reasonable doubt that the words purported to be those of Smith were his—that was his voice—then if you're not convinced beyond a reasonable doubt, just stop right there and you have to find him not guilty.

'Next, if you find and if you're satisfied beyond a reasonable doubt that those were his words, next you must determine solely from the conversations contained in those two tapes whether or not the government has proved beyond a reasonable doubt that Smith was in fact a participant in a joint venture or business of running a gambling book—of bookmaking—that is, in gambling [sic] Unless you first so find, then you must, of course, acquit the defendant.'

"As if this were not enough, the court said it was going to repeat it, and did repeat it in somewhat briefer form (Tr. 239–240). More to the same effect was later repeated to the jury in answer to a question put to the court after the jury had retired, to which instructions there were no objections, following which the two tapes were replayed (Tr. 254–258).

"It thus appears that the rule for which defendant contends was fully complied with by the trial court."

■ C. We find no merit in the appellant's position that the evidence to prove the conspiracy, and to prove appellant's participation in it, was insufficient, viewing it, as we must, in a light most favorable to the prosecution. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

D. We next consider admission in No. 74–2937 of expert testimony.

Any qualified expert, and usually, only such a qualified expert,[1] may express an opinion, and not be restricted in his testimony to facts of which he knows of his own knowledge.

"In regard to some matters of expert opinion an expert *must*, if he is going to give an opinion that will be helpful to the jury, rely on reports, statements, and other information that might not be admissible."

Comment, Law Revision Commission, California Evidence Code, § 801. (Emphasis in original.) *See also United States v. Sims*, [514] F.2d [147], Slip Op., April 2, 1975."

Myrdal's opus, "An American Dilemma" was cited by the Supreme Court in *Brown v. Board of Education of Topeka*, 347 U.S. 483, 495, note 11, 74 S.Ct. 686, 98 L.Ed. 873. Myrdal's volume included his theories and conclusions as well as facts.

Appellant's objection to the expert's opinion herein is good argument to a jury or other trier of fact. It goes to the weight of the expert's testimony, and to his truthfulness and integrity, and the ultimate worth of his testimony, but does not make the evidence inadmissible.

Appellant on cross-examination was entitled to draw to the jury's attention, as he did, the differences existing between defendant's Exhibit S–2 (Glossary of Terms in the Drug Culture) and the expert's opinion testimony, but the jury was not required to reject testimony of witness Lee, including his opinions.

We find no error on this final matter.

All convictions are *affirmed*.

---

1. Certain non-expert witnesses, in certain circumstances, may express an opinion, such as an intimate acquaintance's opinion as to a person's sanity; or birth, marriage, divorce, ancestry; etc.

California Evidence Code, §§ 870 and 1311.