UNITED STATES of America, Appellee,

v.

Kale KALUSTIAN, Appellant.

UNITED STATES of America, Appellee,

v.

Patrick Dale POND, Appellant.

UNITED STATES of America, Appellee,

v.

Stanley Norman GRAY, Appellant.

UNITED STATES of America, Appellee,

v.

David SELDITCH, Appellant.

UNITED STATES of America, Appellee,

v.

Otto Vincent MARINO, Appellant.

UNITED STATES of America, Appellee,

v.

Leopold OBEZO, Appellant.

UNITED STATES of America, Appellee,

v.

Mable Linda CUCCIA, Appellant.

Nos. 74–3314, 74–3315, 74–3305, 74–3264 and 74–3265.

United States Court of Appeals, Ninth Circuit.

Aug. 4, 1975.

As Amended Dec. 11, 1975.

Rehearing and Rehearing En Banc Denied March 25, 1976.

586

Arthur Lewis (argued), Los Angeles, Cal., for appellant in No. 74–3314.

James A. Twitty, Sp. Atty. (argued), Dept. of Justice, Los Angeles, Cal., for appellee in No. 74–3314.

Edward I. Gritz, Los Angeles, Cal., for appellant in No. 74–3315.

James A. Twitty, Sp. Atty., Los Angeles, Cal., for appellee in No. 74–3315.

David S. Sperber, Los Angeles, Cal., for appellant in No. 74–3305.

William D. Keller, U. S. Atty., Los Angeles, Cal., for appellee in No. 74–3305.

Lee A. Freeman (argued), Los Angeles, Cal., for appellant in No. 74–3264.

Kevin O'Malley (argued), U. S. Dept. of Justice, Los Angeles, Cal., for appellee in No. 74–3264.

James Edward Green (argued), Van Nuys, Cal., for appellant in No. 74–3265.

Kevin F. O'Malley (argued), U. S. Dept. of Justice, Los Angeles, Cal., for appellee in No. 74–3265.

## OPINION

Before ELY and HUFSTEDLER, Circuit Judges, and SKOPIL,* District Judge.

SKOPIL, District Judge:

Appellants seek review of their convictions for illegal gambling activities. 18 U.S.C. §§ 1955 and 2. They claim their motions for suppression of evidence were improperly denied. They also argue that there was insufficient evidence to sustain the verdicts.

According to the Government, confidential informants "advised" federal agents in 1971 that defendant Kalustian was operating a bookmaking operation from the Topper Club (Club) in Rosemead, California. Defendants Pond and Marino, among others, were identified as agents for the operation. On December 20, 1971, the Department of Justice sought court orders authorizing wire taps on three telephones at the Club, one at defendant Stempke's residence, and one at the residence of Patricia Jackson. The application was authorized by Attorney General John Mitchell and granted on December 20, 1971. 18 U.S.C. § 2518(1)(c) provides that such applications shall include

"a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

The Government attempted to fulfill that requirement through affidavits supplied by Special FBI Agent James Brent (Affidavits), which essentially contained the following representations:

"The informants named herein have all said that they will not testify to information they have provided, even if granted immunity. * * *

"Experience has further established that even though telephone toll records are available which indicate a person is engaged in illicit gambling, the records themselves are not sufficient to prove the gambling activities. Standard investigative techniques have not succeeded in providing evidence to sustain prosecution in this case and would only succeed to a limited degree in establishing that Kale Kalustian, also known as Kelly, Patrick Dale Pond, Otto Vincent Marino, Patricia Jackson, Bill Stempke, and others as yet unknown, are involved in gambling activities over the telephone subscribed to in the name of the Topper Club. * * *

"Furthermore, such investigative techniques as physical surveillance and the records obtainable on Kale Kalustian, also known as Kelly, Patrick Dale Pond, Otto Vincent Marino, Patricia Jackson, Bill Stempke, and others as yet unknown, contain little probability of success in securing presentable evidence. Based upon my knowledge and experience as a Special Agent of the Federal Bureau of Investigation in the investigation of gambling cases and my association with other Special Agents who have conducted investigation of gambling activities, normal investigative procedures appear to be unlikely to succeed in establishing that

---

* Honorable Otto R. Skopil, Jr., United States District Judge for the District of Oregon, sitting by designation.

the above individuals are involved in gambling activities over the aforementioned telephones in violation of Federal laws. My experience and the experience of other Agents has shown that gambling raids and searches of gamblers and gambling establishments have not, in the past, resulted in the gathering of physical or other evidence to prove all elements of the offense. I have found through my experience and the experience of other Special Agents, who have worked on gambling cases, that gamblers frequently do not keep permanent records. If such records have been maintained, gamblers, immediately prior to or during a physical search, sometimes destroy the records. Additionally, records that have been seized in past gambling cases have generally not been sufficient to establish elements of Federal offenses because such records are difficult to interpret, and many times are of little or no significance without further knowledge of the gamblers' activities. Therefore, the interception of these telephone communications is the only available method of investigation which has a reasonable likelihood of securing the evidence necessary to prove violation of these statutes. * *

"Wherefore, because of the existence of facts and underlying circumstances of the continuing investigation listed above in paragraphs 4 through 32b, I submit that the probable cause as submitted in paragraphs 3a, 3b, and 3d exists; that the extensive normal investigative procedures tried, as set forth in paragraphs 4 through 32b, have failed to gather evidence necessary to sustain prosecution for violation of the offenses enumerated in paragraph 3a, and reasonably appear unlikely to succeed; * * * *"

Appellants contend that their motions to suppress the wiretap evidence should have been granted because the Government's application did not satisfy 18 U.S.C. § 2518(1)(c). They argue that the supporting affidavits contain bald conclusions rather than facts from which the Attorney General and the judge could determine whether "normal investigative procedures" were viable alternatives to electronic surveillance. § 2518(3)(c).

■ Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Act), 18 U.S.C. § 2510 et seq., absolutely prohibits electronic surveillance by the federal government except under carefully defined circumstances and after securing judicial authority. Procedural steps provided in the Act require strict adherence. *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). The importance of these procedures reflects the dual purpose of Title III, which is to

"(1) [protect] the privacy of wire and oral communications, and (2) [delineate] on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." S. Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, pp. 2112, 2153 (hereinafter cited as "History").

■ Title III was written to create limited authority for electronic surveillance in the investigation of specified crimes thought to lie within the province of organized criminal activity. History, pp. 2153–2163. It was designed to conform to prevailing constitutional standards. *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The restraint with which such authority was created reflects the legitimate fears with which a free society entertains the use of electronic surveillance. As stated in *Berger, supra,* "Few threats to liberty exist which are greater than that posed by the use of eavesdropping devices". 388 U.S. at 63, 87 S.Ct. at 1885.

Section 2518(1)(c) of the Act

"is patterned after traditional search warrant practices and present English procedure in the issuance of warrants

to wiretap by the Home Secretary. [citation omitted] The judgment [of the judge or magistrate] would involve a consideration of áll the facts and circumstances. * * * Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely. *See Giancana v. United States,* 352 F.2d 921 (7th Cir. 1965), cert. denied, 382 U.S. 959, 86 S.Ct. 437, 15 L.Ed.2d 362; *New York v. Saperstein,* 2 N.Y.2d 210, 159 N.Y. S.2d 160, 140 N.E.2d 252 (1957). What the provision envisions is that the showing be tested in a practical and commonsense fashion. Compare *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)." History, p. 2190.

▉ Our review of the wiretap authorization is limited. We are reminded that

"[w]here [the underlying circumstances in the affidavit] are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States v. Ventresca, supra* at 109, 85 S.Ct. at 746.

Within our prescribed limits, however, the utmost scrutiny must be exercised to determine whether wiretap orders conform to Title III. The Act has been declared constitutional only because of its precise requirements and its provisions for close judicial scrutiny. *United States v. Bobo,* 477 F.2d 974 (4th Cir. 1973); *United States v. Cox,* 449 F.2d 679 (10th Cir. 1971), *cert. denied,* 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972); *United States v. Cox,* 462 F.2d 1293 (8th Cir. 1972). Our view of wiretap orders must ensure that the issuing magistrate properly performed his function and did not "serve merely as a rubber stamp for the police". *Ventresca, supra* at 109, 85 S.Ct. at 746.

The affidavits set forth facts from which probable cause to infer the opera-tion of a gambling conspiracy could be gleaned. Nearly all of these "facts" trickled into the ears of FBI agents through the efforts of a series of professional gamblers and bookmakers. Unfortunately, as the affidavits attest, none of the underworld informants are willing to testify. The refusal of the informants to testify is a matter for the court to consider in authorizing electronic surveillance. However, standing alone, it may not be sufficient. Evidence of the telephone numbers used by the bookmaking operation and the identities of some of the conspirators could not successfully support a prosecution without that testimony.

Consequently the investigating officials decided electronic surveillance was imperative. They discarded alternative means of further investigation because "knowledge and experience" in investigating other gambling cases convinced them that "normal investigative procedures" were unlikely to succeed. Agent Brent recites that searches are often fruitless because gamblers keep no records, destroy them, or maintain them in undecipherable codes. Use of the phone company's records alone is inconclusive.

The affidavit does not enlighten us as to why this gambling case presented any investigative problems which were distinguishable in nature or degree from any other gambling case. In effect the Government's position is that all gambling conspiracies are tough to crack, so the Government need show only the probability that illegal gambling is afoot to justify electronic surveillance. Title III does not support that view.

"Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications. *These procedures were not to be routinely employed as the initial step in criminal investiga-*

**590**

*tion.* Rather, the applicant must state that and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Giordano, supra.* (emphasis added)

The Government's position is further undermined by the activity of other crimefighting organizations. California, among other states, deprives its policemen of electronic surveillance in all cases. This has not prevented them from successfully prosecuting gambling crimes.

Obviously electronic surveillance can facilitate criminal investigation. Because other investigative techniques are usually slower and more difficult, Congress did not require exhaustion of "all possible" investigative techniques before orders for wiretaps could be issued. *U. S. v. Smith,* 519 F.2d 516 (9th Cir., 1975). But Title III does not allow wiretapping to replace such other techniques unless they "have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous".

■ The Government failed in this case to satisfy 18 U.S.C. § 2518(1)(c). Its application did not adequately show why traditional investigative techniques were not sufficient in this particular case. A judge reviewing a wiretap application is handicapped without such a showing. Title III and the individual's right to privacy, which it seeks to preserve, demand no less than a full and complete statement of underlying circumstances.

■ Mere conclusions by the affiant are insufficient to justify a search warrant, *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), or a wiretap order. More specifically, they do not provide facts from which a detached judge or magistrate can determine whether other alternative investigative procedures exist as a viable alternative.

■ The trial court's order denying appellants' motions for suppression of electronic surveillance evidence is re-

versed, and all consolidated cases are remanded for a new trial. All evidence gathered through electronic surveillance pursuant to the original § 2518 order and its extensions shall not be admitted in subsequent proceedings.

In view of that ruling, the other issues on appeal are not reached.

REVERSED and REMANDED.