UNITED STATES of America, Appellee,

v.

Clarence J. MATYA et al., Appellants.

No. 74–1947.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1976.

Decided Sept. 9, 1976.

Oscar B. Goodman, Goodman & Snyder, Las Vegas, Nev., for appellants.

William E. Zleit, U. S. Dept. of Justice, Kansas City, Mo., for appellee; Daniel E. Wherry, U. S. Atty., D. Neb., Omaha, Neb., and Gary Cornwell, Sp. Atty., Dept. of Justice, Kansas City, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, HENLEY, Circuit Judge, and DEVITT, Chief District Judge.*

* Edward J. Devitt, Chief Judge, District of Minnesota, sitting by designation.

VAN OOSTERHOUT, Senior Circuit Judge.

An indictment filed in the United States District Court for the District of Nebraska on February 21, 1973, charged fifteen individuals with engaging in an illegal gambling business in violation of 18 U.S.C. § 1955.[1] Beginning on September 4, 1974, and continuing through September 28, 1974, twelve[2] of the individuals named in that indictment were jointly tried to a jury, Judge Denney[3] presiding. Each of the twelve was convicted and sentenced. Each of the twelve appeals.[4]

The contentions raised are as follows:

I. The contents of the communications intercepted during a certain wiretap should have been suppressed based on noncompliance with the "necessity" requirements of 18 U.S.C. § 2518(1)(c) and (3)(c).

II. The failure to mention the purported violation of a particular law of the State of Nebraska caused a fatal defect in the process used to obtain the wiretap order.

III. The Nebraska gambling statute, R.R.S.Neb. § 28–947 (1943), is unconstitutionally vague and overbroad.

IV. Congress did not intend 18 U.S.C. § 1955 to elevate, for purposes of obtaining federal jurisdiction, a state misdemeanor into a federal felony when the activity complained of was of a purely intrastate character.

V. The evidence was insufficient to sustain a conviction under the statute since there was not proof beyond a reasonable doubt that at least five of the defendants conducted a single gambling enterprise.

The district court rejected each of these contentions. For the reasons hereinafter set out, we agree with the district court in each instance and affirm the convictions.

**I.**

On February 4, 1972, the Government submitted an application to Judge Urbom[5] seeking authority to intercept wire communications of seven named individuals, four of whom are defendants herein, and others, then unknown, over two certain telephones in Omaha, Nebraska. The application asserted there was probable cause to believe that violations of 18 U.S.C. §§ 1955 and

---

1. The statute provides in pertinent part:
§ 1955. Prohibition of illegal gambling businesses.
   (a) Whoever conducts, finances, manages, supervises, directs or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
   (b) As used in this section—
   (1) "illegal gambling business" means a gambling business which—
      (i) is a violation of the law of a State or political subdivision in which it is conducted;
      (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
      (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
   (2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

2. The convicted defendants are Clarence J. Mayta, Helen Mayta, Edward Abboud, Edward L. Stanek, Donald Gene Moran, James M. Walker, George H. Chonis, Louis J. Urzendowski, Otto J. Matulka, Donald J. Quinn, Paul F. Murphy and Dale Murphy.
   Of the three remaining individuals named in the indictment, two were granted a severance for medical reasons and one entered a no contest plea. None of these three are parties to this appeal.

3. The Honorable Robert V. Denney, United States District Judge for the District of Nebraska.

4. The § 1955 offense was charged in Count I of the indictment. A second count charged two of the defendants with violation of 18 U.S.C. §§ 1952 and 2. Both defendants were found not guilty on Count II.

5. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

371[6] had occurred and were occurring and that the other requisites for the desired court order had been satisfied. Accompanying the application was, *inter alia*, an affidavit by an FBI special agent setting forth the results of investigations to that date and purportedly establishing the factual basis upon which the application was predicated.

In an order dated February 4, 1972, Judge Urbom made certain findings and authorized the wiretaps substantially as requested. Included among his findings was a statement that "normal investigative procedures reasonably appear unlikely to succeed." It is unnecessary for our purposes to specify other particulars of the February 4 order.

Defendants' initial contention challenges the sufficiency of the averments in the affidavit on the ground that they do not include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," as required by 18 U.S.C. § 2518(1)(c). See also 18 U.S.C. § 2518(3)(c).

Paragraph 4[7] of the affidavit submitted in this case set forth a history of physical surveillance at various locations in the Omaha area, including the residence at which the target phones were located and a number of local bars from which much of the betting allegedly occurred. It also set forth information supplied by a total of seven confidential informants, all of whom were unwilling to testify for fear of their personal safety. It related the results of an interview with Clarence John Mayta, the central figure in the alleged illegal gambling enterprise. It also revealed the examination of various telephone, motor vehicle and police records. In short, it substantiated in detail a statement in paragraph 5 of the affidavit that standard investigative techniques had been utilized over a six-month period.

Paragraph 5 of the affidavit represented that continued use of standard investigative techniques "would succeed only to a limited degree" in establishing the scope and nature of the illegal gambling operations and the identity of other individuals involved therein. This conclusion was based on the "secretive and guarded manner in which this gambling conspiracy is being conducted" and on the affiant's evaluation of the circumstances "in light of [his] experience . . . in the investigation of gambling cases. . . ." The remainder of paragraph 5 detailed investigative problems commonly encountered in gambling cases, including the likely destruction of records and the difficulty in interpreting records even if seized.

Elsewhere, the affidavit recited that "[c]onstant access to a telephone is necessary for the successful operation of a bookmaking business." The affidavit as a whole substantiated this allegation as applied to the facts at hand.

Defendants strenuously argue that the recitations in paragraph 5 of the affidavit, concerning what the affiant had learned from past experience in gambling cases, are of a "boilerplate" variety and that in any event the affidavit does not adequately explain why certain investigative techniques, such as immunity grants or conventional searches, would have been unsuccessful.

The first half of the argument overlooks the fact that the allegedly "boilerplate" allegations of paragraph 5 are not the only pertinent allegations in the affidavit. As noted above, the affidavit revealed six months of prior investigative activity in this case, all of which had failed to reveal the scope of operations or the identity of individuals involved. *United States v. Kalustian*, 529 F.2d 585 (9th Cir. 1975), relied upon by defendants, is thus inapposite. As we noted in *United States v. Daly*, 535 F.2d 434, 439 n. 4 (8th Cir. 1976):

In *Kalustian*, alternative means of investigation were discarded because "knowl-

---

6. 18 U.S.C. § 371 is the conspiracy statute.

7. Paragraph 4 consumed some thirteen of the affidavit's nineteen pages.

edge and experience" in investigating other gambling cases convinced government agents that normal techniques were unlikely to succeed. . . . *But see United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir. 1975), [*cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976)]. The court in *Kalustian* ordered the evidence suppressed because the alternative means were given little opportunity to succeed. As discussed above, government agents used alternative means in this case. Inspector Olk's affidavits explain why those investigative techniques were inadequate.

Government agents also used alternative means in this case, and, as explained below, the affidavit adequately set forth why they were inadequate. Thus, whatever our view of the *Kalustian* holding may be, and we need not address that question here, the simple fact is that "[c]ourts have upheld authorizations based on applications that combine statements about general investigative experience in the type of crime and the particular facts of the case at hand." *United States v. Vento*, 533 F.2d 838, 850 n. 19 (3d Cir. 1976). And, despite defendants' statement to the contrary, even the Ninth Circuit, which authored *Kalustian*, apparently shares this view. *See United States v. Kerrigan*, 514 F.2d 35, 38 (9th Cir. 1975). Accordingly, the mere fact that the affidavit before us rested *in part* on statements that would be equally applicable to almost any gambling case does not render the affidavit insufficient.

█ The second half of defendants' argument, that certain specific investigative techniques were neither employed nor explained to be inadequate, cannot be squared with the established law of this circuit. As we stated in *United States v. Daly, supra* at 438:

We recognize that Congress intended these sections to restrict wiretaps to those which are necessary as well as reasonable. But Congress did not require the exhaustion of "specific" or "all possible" investigative techniques before wiretap orders could be issued. *United States*

*v. Smith*, 519 F.2d 516, 518 (9th Cir. 1975). Congress prohibited wiretapping only when normal investigative techniques are *likely* to succeed *and* are not too dangerous. "Merely because a normal investigative technique is theoretically possible it does not follow that it is likely." S.Rep. 90–1097, U.S.Code Cong. and Admin. News, pp. 2112, 2190 (1968). Sections 2518(1)(c) and 2518(3)(c) are only designed to ensure that wiretapping is "not to be routinely employed as the initial step in criminal investigation", *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341, 353 (1974), and " * * * to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983, 39 L.Ed.2d 225, 236 (1974). The government's showing must, of course, be tested in a "practical and commonsense fashion." *United States v. Kirk*, 534 F.2d 1262, at 1274 (8th Cir. 1976); *United States v. Brick*, 502 F.2d 219, 224 n. 14 (8th Cir. 1974), *quoting*, S.Rep. 90–1097, *supra*, at 2190. And as in other suppression matters, considerable discretion rests with the judge to whom the wiretap application is made. *United States v. Smith, supra*, 519 F.2d at 518.

Judged by these standards, the affidavit before us was sufficient. It differs only in minor respects from the affidavits approved in *United States v. Brick, supra* at 224, and *United States v. Schaefer*, 510 F.2d 1307, 1310 (8th Cir.), *cert. denied*, 421 U.S. 975, 978, 95 S.Ct. 1975, 44 L.Ed.2d 466 (1975). It convinces us that the wiretap here was not "routinely employed as the initial step in the investigation." It explains that other techniques were used first, that these other techniques failed to yield specified pertinent facts, and it relates to a reasonable extent why the other procedures would not yield those facts. It was not necessary that the Government explain away *all* possible alternative techniques, since the Government is not required to use a wiretap only as a last resort. *United States v. Smith*,

*supra* at 518, *United States v. Kerrigan, supra* at 38.

We hold that the affidavit in this case complied with 18 U.S.C. § 2518(1)(c) and (3)(c).[8]

## II.

Eighteen U.S.C. § 2518(1)(b)(i) requires that a wiretap application set forth "details as to the particular offense that has been, is being, or is about to be committed." Eighteen U.S.C. § 1955, the illegal gambling business statute upon which the wiretap application (as well as the prosecution) in this case was based, defines illegal gambling business as a gambling business which, *inter alia,* "is a violation of the law of a State or political subdivision in which it is conducted." The wiretap application in this case asserted there was probable cause to believe that violations of § 1955 had occurred and were occurring. The affidavit which accompanied the application set out underlying facts to justify this conclusion and recited that "Nebraska law prohibits the accepting and making of bets on sports events other than the parimutuel betting conducted at legally authorized race tracks pursuant to state law." It did not specify *which* Nebraska law prohibited such bets. Defendants contend that 18 U.S.C. § 2518(1)(b)(i) required it to do so.[9]

The Fourth Amendment requires in part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." It is this basic requirement which Congress wrote into 18 U.S.C. § 2518. *United States v. Kahn,* 415 U.S. 143, 158, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974) (Douglas, J., dissenting). At least since *Nathanson v. United States,* 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), it has been clear that the purpose of the affidavit which accompanies a request for a search warrant is to advise the authorizing judge or magistrate of the "facts and circumstances" establishing probable cause. While the law in this area has been much refined over the years, the central focus on the facts recited in the affidavit has remained unaltered. *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

In a § 1955 context, knowledge of the state law purportedly violated is essential to the judge's or magistrate's task of determining whether the facts recited in the affidavit establish probable cause. However, citation of the statute in the affidavit is unnecessary to providing the judge or magistrate with that knowledge. We have no doubt that Judge Urbom either was familiar with the Nebraska gambling statutes or had ready access to such statutes and satisfied himself as to the Nebraska law before issuing the challenged order. Nor would the failure of the affidavit to specify which Nebraska law was purportedly violated in any way hamper this court in assessing whether Judge Urbom's probable cause determination was correct, if that determination were challenged. Defendants do not allege that Judge Urbom misconstrued or misapplied the Nebraska statute or that they have suffered any prejudice as a result of the failure of the affidavit to cite the statute. Consequently, neither the Fourth Amendment nor § 2518 supports defendants' position.[10] We hold

8. In *United States v. Steinberg, supra,* 525 F.2d at 1130, the Second Circuit stated that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." The facts recited in the affidavit before us were sufficient to invoke this principle, which supports the result we reach.

9. The subsequent indictment did cite R.R.S. Neb. § 28–947 (1943). Under *United States v. Cartano,* 534 F.2d 788, 791 (8th Cir. 1976), this may have been unnecessary. Of course, *Cartano* is not dispositive here because the functions of an indictment and a wiretap application are different.

10. Our textual analysis establishes that there is no substantive reason why the affidavit should be found defective. We also discover no procedural or evidentiary reason why it should be found defective.

that the affidavit was not defective merely because it failed to cite the Nebraska statute. *See · United States v. Averell,* 296 F.Supp. 1004, 1014 (E.D.N.Y.1969).

## III.

■ Defendants next contend that the Nebraska statute [11] upon which the federal conviction rests is unconstitutionally vague and overbroad. The vagueness argument falters for the reason that: "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). *See United States v. Powell,* 423 U.S. 87, 92–94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Big Eagle v. Andera,* 508 F.2d 1293, 1297 (8th Cir. 1975). As stated by the district court, "the evidence clearly supports and the defendants admit to, a finding that they were engaged in bookmaking. This conduct is proscribed by the statute with sufficient clarity to satisfy constitutional scrutiny." Whatever else might be said about the statute, a vagueness argument will not, at least absent implication of the First Amendment, carry defendants beyond this initial observation.[12]

■ Defendants' overbreadth argument focuses upon the fact that, allegedly, the Nebraska statute might be read as encompassing such presumably innocent conduct as selling playing cards and reaching such presumably innocent persons as the itinerant purchaser of a lottery ticket. The Government admits that certain portions of the statute "may not be admirably as narrow and precise as possible", and we agree. Inasmuch as defendants do not contend that the Nebraska legislature either could not or did not intend to proscribe their bookmaking activities, however, the mere fact that the statute is in some respects imprecise is of no consequence here. The · overbreadth doctrine, far from being an expansive license by which courts routinely invalidate statutes which might have been drafted with more precision, is a doctrine

The Federal Rules of Civil and Criminal Procedure and the Federal Rules of Evidence now avoid characterizing the process by which courts take cognizance of what the law is as *judicial notice,* thereby emphasizing the non-evidentiary nature of the process. See Fed.R. Civ.P. 44.1; Fed.R.Crim.P. 26.1; Fed.R.Ev. 201; Notes of Advisory Committee to Fed.R.Civ.P. 44.1 (1966). These rules, as last amended in 1972, allow courts to determine even foreign law on the basis of any relevant material or source, whether or not submitted by a party and whether or not admissible under the Federal Rules of Evidence. Fed.R.Civ.P. 44.1; Fed.R. Crim.P. 26.1. Presumably, the drafters felt it unnecessary to include a similar statement with respect to domestic law.

Since the wiretap application in this case was considered by Judge Urbom prior to the effective date of the latest amendments to the above rules, we observe that prior caselaw holds that federal courts may judicially notice state law even though neither party raises it. *Petersen v. Chicago G. W. Ry.,* 3 F.R.D. 346 (D.Neb.), affirmed, 138 F.2d 304 (8th Cir. 1943). *See Simmons v. Continental Casualty Co.,* 410 F.2d 881, 884 (8th Cir. 1969). The *Petersen* holding accords with the result we reach here, and its substance remains intact following the developments noted in the preceding paragraph.

Rule 41, Fed.R.Crim.P., does not require an affidavit to cite the statute purportedly violated.

11. R.R.S.Neb. § 28–947 (1943) reads as follows: "Whoever keeps or exhibits any gaming table, establishment, device or apparatus, to win or gain money or other property of value, or aids, assists or permits others to do the. same, or whoever engages in gambling for a livelihood, or shall be without any fixed residence, and in the habit or practice of gambling, shall be deemed and taken to be a common gambler, and shall be imprisoned in the county jail not less than one nor more than six months, and be fined in any sum not exceeding five hundred dollars."

12. Defendants separately allege that the Nebraska statute punishes status rather rather than criminal activity. *Cf. Papachristou v. Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). *Papachristou* rested on · vagueness grounds and is accordingly subject to the standing requirement. articulated in the text above. Since defendants' bookmaking activity was not mere status, it is immaterial in this case whether the statute might in some circumstances be read as punishing status or whether, if it may be so read, *Papachristou* would in such circumstances bar a conviction.

whose function is "limited . . . at the outset", *Broadrick v. Oklahoma, supra,* 413 U.S. at 615, 93 S.Ct. 2908, and, specifically, a doctrine by which:

> Litigants . . . are permitted to challenge a statute [on its face] not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

*Id.* at 612, 93 S.Ct. at 2916. *See Erznoznik v. Jacksonville,* 422 U.S. 205, 215–17, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Bigelow v. Virginia,* 421 U.S. 809, 815–17, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). Defendants do not suggest, and they would be hard-pressed to do so, that any of the conduct arguably reached by the statute is properly characterized as free expression. Failing that, they cannot successfully invoke the overbreadth doctrine.[13]

### IV.

■ Defendants also challenge the constitutionality and the district court's construction of 18 U.S.C. § 1955. Specifically, they allege: (1) by resting the federal offense on state law, the statute is nonuniform in application and therefore violates the due process clause of the Fifth Amendment; (2) Congress did not intend to reach purely intrastate gambling activities; and (3) Congress did not intend to elevate a state misdemeanor into a federal felony.

The first two allegations just listed have been repeatedly rejected by this court. *Schneider v. United States,* 459 F.2d 540 (8th Cir.), *cert. denied,* 409 U.S. 877, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972); *United States v. Meese,* 479 F.2d 41, 42–43 (8th Cir. 1973);

*United States v. Wolk,* 466 F.2d 1143, 1146 n. 2 (8th Cir. 1972). *Accord, United States v. Morrison,* 531 F.2d 1089, 1093 (1st Cir. 1976); *United States v. Hawes,* 529 F.2d 472, 477–78 (5th Cir. 1976). We adhere to our prior decisions.

■ We also reject defendants' contention that Congress did not intend to elevate a Nebraska misdemeanor into a federal felony. Although the underlying Nebraska statute in this case does define a misdemeanor, defendants' characterization of § 1955 as "elevating" that misdemeanor into a federal felony is not accurate. It must be recalled that violation of state law is not the sole element of a § 1955 offense. The Government must also establish that five or more persons are involved and that the gambling business remains in substantially continuous operation for a period in excess of thirty days or that the business has gross revenues of $2,000 in any single day. As the Supreme Court has observed, "[m]ajor gambling activities were a principal focus of congressional concern." *Iannelli v. United States,* 420 U.S. 770, 787, 95 S.Ct. 1284, 1295, 43 L.Ed.2d 616 (1975). The requirements of § 1955 on their face effectuate this concern. More fundamentally, the Supreme Court has also observed that the Organized Crime Control Act of 1970, of which § 1955 is a part, "is a carefully crafted piece of legislation." *Id.* at 789, 95 S.Ct. at 1296. It is thus significant that the statute makes no distinction whatsoever between state felonies and state misdemeanors. Similarly, the House Report which accompanied the 1970 Act[14] makes no such distinction. Defendants cite no convincing authority indicating that or why the statute should not be construed as written,[15] and

---

**13.** Appellants' brief summarily alleges that the Nebraska statute is unconstitutional because "it embraces different subject matter, the elements of which have no bearing or relation to one another." No authority is cited for this proposition, and no reasoning or analysis is presented. The Government informs us that this contention is intended to rest on Article III, Section 14 of the Nebraska Constitution, which proscribes bills containing more than one sub-

ject. We decline to address the merits of this contention. See Rule 28(a)(4), Fed.R.App.P.

**14.** H.R.Rep.No.91–1549 (1970), U.S.Code Cong. and Admin.News pp. 4007, 4009–10, 4028–32 (1970).

**15.** Defendants do cite *Rewis v. United States,* 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), in which the Supreme Court reversed certain convictions under the Travel Act, 18 U.S.C. § 1952, and the aiding and abetting

we perceive no reason why it should not be so construed. We accordingly reject defendants' contention.[16]

## V.

■ Lastly, defendants contend that the evidence was insufficient to sustain their convictions. They contend that, except as to defendant Clarence J. Mayta, there is no evidence to establish that they were systematically and continuously involved in the gambling business. A claim also is apparently made that the requirements of the statute that five or more persons be involved and that the gambling has been in operation for thirty or more days or that

the gross income has exceeded $2,000 on a single day have not been met.

The record in this case includes 3,802 pages of transcript as well as numerous exhibits including tapes of intercepted calls. Defendants' brief on this point consumes slightly more than one page and consists entirely of unsupported conclusions.

The trial court, which had the benefit of hearing all the evidence, in an order filed October 8, 1974, denying motions of all defendants for judgments of acquittal, found and determined:

> Having the evidence of this case fresh in the mind of the Court and after a review of all the notes taken in this four week

statute, 18 U.S.C. § 2. Section 1952 prohibits interstate travel with intent to "promote, manage, establish, carry on, or facilitate", *inter alia,* illegal gambling activity. In *Rewis* the Court held that operators of an illegal gambling business could not successfully be prosecuted under §§ 1952 and 2 merely because their customers crossed state lines to place bets. The following passage of *Rewis,* it is urged, supports defendants' contention that § 1955 was not intended to apply to state misdemeanors.

> [W]e are struck by what Congress did not say [in § 1952]. Given the ease with which citizens of our Nation are able to travel and the existence of many multi-state metropolitan areas, substantial amounts of criminal activity, traditionally subject to state regulation, are patronized by out-of-state customers. In such a context, Congress would certainly recognize that an expansive Travel Act would alter sensitive federal-state relationships, could overextend limited federal police resources, and might well produce situations in which the geographic origin of customers, a matter of happenstance, would transform relatively minor state offenses into federal felonies.

401 U.S. at 811–12, 91 S.Ct. at 1059.

Close examination of the *Rewis* opinion convinces us that *Rewis* supports our conclusion rather than defendants' contention. The Government's argument in *Rewis* was attenuated. The defendants there, who did manage an illegal intrastate lottery, did not travel interstate in conducting it. The latter fact precluded any literal application of § 1952. The Government, recognizing as much, argued that the business' customers did travel interstate and that the operators were responsible for *that* travel. Apparently, the argument was based to some extent on the aiding and abetting statute, § 2. In any event, the argument was dubious at best, since the Supreme Court was firmly of the view that the customers

themselves did not violate § 1952. It was in this context that the Court stated that, in light of the delicate federal-state and other concerns at issue, it would not attribute so expansive a view to the Travel Act absent a clear statement by Congress. Most importantly, the Court recognized that "[i]t is not for us to weigh the merits of these factors", 401 U.S. at 812, 91 S.Ct. at 1059, and it rested its holding squarely on the fact that "neither statutory language nor legislative history supports such a broad-ranging interpretation of § 1952." *Id.*

We do not doubt that the important factors enumerated in the quoted passage from *Rewis* are highly pertinent to the congressional decisionmaking embodied in § 1955. However, in stark contrast to the attenuated argument presented by the Government in *Rewis,* the Government's case here rests on a straightforward application of the plain language of § 1955. Obviously cognizant that it was delving into areas of sensitive federal-state relationships, the Congress has said that conducting a gambling business illegal under state law is a federal felony if certain quantitative requirements are established. It is not for us to weigh the merits of that determination. In short, as the *Rewis* Court was struck by what Congress did not say in § 1952, we are struck by what Congress did say in § 1955.

16. The Ninth Circuit has rejected as without merit any contention that Congress could not constitutionally define a federal felony partially in terms of a state misdemeanor. In *United States v. Kerrigan,* 514 F.2d 35, 37 n. 1 (9th Cir. 1975), in reference to § 1955, that court stated:

> Congress' power to proscribe conduct carries with it the power to impose appropriate penalties without attempting to match them to varying state punishments for similar conduct.

We agree.

trial, the Court finds that there was an abundance of evidence, more than sufficient, as to each defendant which demanded that this case be submitted to the jury to consider the guilt or innocence of each defendant under Count I.

\* \* \* \* \* \*

The evidence admitted in this case was of such sufficiency that the jury would be allowed to find that a gambling business existed in the State of Nebraska at some time between October 15, 1970, and February 12, 1972. The evidence was also competent and sufficient to allow the jury to find that such business, involving five or more persons, was illegal under the laws of the State of Nebraska, and that each of these defendants conducted, financed, managed, supervised, directed or owned all or part of such business. There was also a competent and sufficient amount of evidence from which the jury could find that such gambling business was in substantially continuous operation for a period in excess of thirty (30) days or that such gambling business had a gross revenue of $2,000 or more in any single day between the dates of October 15, 1970, and February 12, 1972. The evidence was competent and sufficient at the close of the Government's case as to each defendant on each essential element that such evidence necessitated and compelled the submission of this case to the jury.

A detailed review of the evidence supporting the trial court's determination would unduly prolong this opinion and serve little useful purpose. We have carefully examined the pertinent portions of the record. Under the well-established principles for review of jury verdicts, we are in complete agreement with the trial court's determination that there is substantial evidence to support the guilty verdict as to each defendant.

Defendants have neither urged nor demonstrated that the trial court's determination on the sufficiency of the evidence was induced by any misinterpretation of the applicable law.

Affirmed.