287 N.W.2d 74 (1980)
205 Neb. 275
STATE of Nebraska, Appellant,
v.
Ross J. DiMAURO, Appellee. STATE of Nebraska, Appellant,
v.
Thomas D. KESSLER, Appellee.
Nos. 42745, 42747.
Supreme Court of Nebraska.
January 8, 1980.
*75 Herbert M. Fitle, City Atty., Gary P. Bucchino, City Pros., and Richard M. Jones, Asst. City Pros., for appellant.
John J. Higgins of Eisenstatt, Higgins, Kinnamon & Okun, P.C., Omaha, for appellees.
Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.
KRIVOSHA, Chief Justice.
The two separate cases involved in this appeal were filed with this court in a single brief and consolidated for argument and will, therefore, be considered by us as one. The State in each case appeals from the action of the District Court for Douglas County, Nebraska, sustaining motions filed in each of the cases to suppress evidence obtained by reason of wiretaps which the defendants maintained were illegally obtained. The District Court for Douglas County, Nebraska, found that the wiretap in each case was in fact, illegally obtained and suppressed the evidence gathered from the use of the wiretaps. We have reviewed the record and find that the action of the trial court is sustained by the record. We therefore affirm.
On October 10, 1978, the Omaha police department made an application to the District Court for Douglas County, Nebraska, for an electronic surveillance order allowing them to intercept the telephone communications of one Rose Trader on telephone number 391-5191, located at 7712½ Blondo Drive in Omaha, Nebraska. On the same day the order was granted.
Pursuant to the order of October 10, 1978, the Omaha police division monitored telephone conversations between Rose Trader and one Joseph J. Digilio. During the course of the electronic surveillance, the police intercepted a telephone conversation between Digilio and the defendant DiMauro. On November 4, 1978, Officer Richard Griffith personally viewed the residence of Ross J. DiMauro located at 9806 Charles Street. Officer Griffith found that the residence was located in a very quiet residential area, with very little vehicle or foot traffic, and that few, if any, vehicles were parked in the street. Officer Griffith therefore concluded from this and other factors that surveillance techniques would not be feasible. Based upon an affidavit of November 7, 1978, supporting the application for the wiretap, the District Court for Douglas County, Nebraska, issued a wiretap order authorizing the interception of telephone communications of the defendant, Ross J. DiMauro, on four different telephone numbers. During the course of this interception, a telephone conversation of DiMauro with the defendant Kessler was intercepted.
The affidavit filed by the State in this case upon which the DiMauro wiretap was authorized recited in part that "while normal police investigative procedures might provide enough evidence to arrest Ross J. Diamauro [sic] for illegal gambling, normal investigative procedures have been attempted in the past by members of the Omaha Nebraska Police Division Vice-Narcotics Unit to obtain enough evidence to apprehand [sic] or at least identify the other parties involved in this illegal gambling operation being conducted by Ross J. DiMauro, and these methods have failed and are most likely to fail in the future." Likewise, at the hearing on the motion to suppress, the State's witness conceded that no other investigative procedure was attempted and all the police sought to do was obtain the wiretap. The witness, Richard T. Griffith, testified as follows: "Q Well, just tell me specifically in DiMauro's case *76 what you did besides get a wiretap? A That's all. Q That's all? A That's all. Q And attempts at other investigation were disregarded in favor of the wiretap, is what it amounts to? * * * A That's correct. Q All right, and that wiretap led you to Mr. Kessler * * * is that correct? A That's correct."
The wiretap in this case was issued pursuant to the provisions of section 86-701 et seq., R.R.S.1943. In the case of State v. Kolosseus, 198 Neb. 404, 253 N.W.2d 157, we traced the history of the state wiretap statute and its relationship with the federal act found at Title 18 U.S.C.A., section 2516. In that decision we said: "Title 18 U.S.C.A., section 2518, and section 86-705, R.R.S.1943, are, in all substantive ways and in wording, virtually identical. They describe the information the application must contain, what the judge entering the order must be able to find, and what the order must contain, as well as certain other matters. The particular subsections of the statutes at issue here are (1)(c) and (3)(c). These subsections read as follows: `A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;. . . normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; . . ..'"
The scope of the foregoing sections has been set forth by the Eighth Circuit many times. In United States v. Jackson, 549 F.2d 517 (8th Cir., 1977), it was stated: "The Supreme Court has stated that the language of §§ 2518(1)(c) and 2518(3)(c) `is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.' United States v. Kahn, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974). In enacting Title III, Congress did not require the exhaustion of `specific' or `all possible' investigative techniques before wiretap orders could issue. United States v. Smith, 519 F.2d 516, 518 (9th Cir. 1975). Congress prohibited wiretapping only when normal investigative techniques were likely to succeed and not too dangerous, United States v. Daly, 535 F.2d 434, 438 (8th Cir. 1976), and `[m]erely because a normal investigative technique is theoretically possible, it does not follow that it is likely.' S.Rep. No. 90-1097, 90th Cong., 2d Sess., reprinted in [1968] U.S.Code Cong. and Admin.News, p. 2190. Thus §§ 2518(1)(c) and 2518(3)(c) have been deemed to be designed only to ensure that wiretapping is not `routinely employed as the initial step in criminal investigation.' United States v. Giordano, 416 U.S. 505, 515, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974)." See, also, United States v. Losing, 560 F.2d 906 (8th Cir., 1977), cert. den., 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); United States v. Abramson, 553 F.2d 1164 (8th Cir., 1977), cert. den., 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977); United States v. Matya, 541 F.2d 741 (8th Cir., 1976), cert. den., 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977); United States v. Kirk, 534 F.2d 1262 (8th Cir., 1976), cert. den., 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977).
We likewise expressed concern over such problems in State v. Kolosseus, supra, wherein the court stated: "It is to be noted that the language of subsection (1)(c) does not require the exhaustion of all other possible or reasonable avenues of investigation. It does not, in fact, require that other methods even be tried if the application demonstrates other procedures are unlikely to succeed or are too dangerous. The requirements are alternative, that is, other methods must have been tried and failed `or' the second alternative must be demonstrated. In United States v. Smith, supra, the court said: `Congress, in its wisdom, did not attempt to require "specific" or "all possible" investigative techniques before orders for wiretaps could be issued. As United States v. Giordano, 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341 (1974), stateswiretap "procedures were not to be routinely employed as the initial step in criminal investigation," but it is equally true "that the statute does not require the government to use a wiretap only as a last resort." United *77 States v. Kerrigan, 514 F.2d 35 (9th Cir. 1975); United States v. Staino, 358 F.Supp. 852, 856-7 (E.D.Pa.1973).' United States v. Vento, supra, [3 Cir., 533 F.2d 838] makes exactly the same point. In that case the court said: `In United States v. Armocida, [3 Cir., 515 F.2d 29] this Court, in accord with the legislative history, adopted a "pragmatic" approach to subsection (c). We held that the government's showing is to be "tested in a practical and commonsense fashion." There is no requirement that every investigative methodology be exhausted prior to application for a section 2518 authorization. Investigators are not obliged to try all theoretically possible approaches. It is sufficient that the government show that other techniques are impractical under the circumstances and that it would be unreasonable to require pursuit of those avenues of investigation. The government must, however, fully explain to the authorizing judge the basis for such a conclusion.' United States v. Pacheco, [5 Cir., 489 F.2d 554] supra, also points out that all possible, imaginable methods need not be tried. We conclude that what is required under the first alternative is that the application make a full and complete disclosure of all that has been done so that the court may make a judgment as to whether more should be required before a tap is authorized."
The history of both the federal act and our own statute makes clear that the wiretapping statute must be used with great caution and may not be indiscriminately used by authorities. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C., section 2510 et seq., severely prohibits the use of electronic surveillance except under the most carefully defined circumstances and then only after securing appropriate judicial authorization. See United States v. Kalustian, 529 F.2d 585 (9th Cir., 1975).
The United States Supreme Court in the case of United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341, said: "The Act is not as clear in some respects as it might be, but it is at once apparent that it not only limits the crimes for which intercept authority may be obtained but also imposes important preconditions to obtaining any intercept authority at all. Congress legislated in considerable detail in providing for applications and orders authorizing wiretapping and evinced the clear intent to make doubly sure that the statutory authority be used with restraint and only where the circumstances warrant the surreptitious interception of wire and oral communications. These procedures were not to be routinely employed as the initial step in criminal investigation. Rather, the applicant must state and the court must find that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. §§ 2518(1)(c) and (3)(c). The Act plainly calls for the prior, informed judgment of enforcement officers desiring court approval for intercept authority, and investigative personnel may not themselves ask a judge for authority to wiretap or eavesdrop."
It is clear that the use of a wiretap, if not scrupulously regulated, could indeed be an intrusion on our constitutional rights. The federal courts have acknowledged that the constitutionality of the surveillance act itself exists only because of the strict restrictions imposed upon its use. In United States v. Kalustian, supra, the court noted, "Within our prescribed limits, * * * the utmost scrutiny must be exercised to determine whether wiretap orders conform to Title III. The Act has been declared constitutional only because of its precise requirements and its provisions for close judicial scrutiny. United States v. Bobo, 477 F.2d 974 (4th Cir. 1973); United States v. Cox, 449 F.2d 679 (10th Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1783, 32 L.Ed.2d 136 (1972); United States v. Cox, 462 F.2d 1293 (8th Cir. 1972)."
While we have clearly stated in State v. Kolosseus, 198 Neb. 404, 253 N.W.2d 157, that neither specific nor all possible investigative techniques must be tried before orders for wiretaps can be issued nor is the government required to use *78 a wiretap only as a last resort; nevertheless, the wiretap procedures cannot be routinely employed as an initial step in criminal investigation. The record in this case discloses, without question, that the wiretap was indeed the initial step in the investigation. The District Court was therefore correct in sustaining the motion to suppress the wiretap evidence. The judgment is affirmed.
AFFIRMED.