UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph William LANDMESSER,
Defendant-Appellant.

No. 76–1540.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 20, 1976.

Decided April 18, 1977.

Rehearing Denied June 3, 1977.

Frank E. Haddad, Jr., Louisville, Ky., for defendant-appellant.

George J. Long, U. S. Atty., James H. Barr, Richard A. Dennis, Louisville, Ky., for plaintiff-appellee.

Before CELEBREZZE, McCREE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

After waiving jury trial, appellant Landmesser was found guilty in the district court of the use of a telephone in interstate commerce for the transmission of wagering information in violation of 18 U.S.C. § 1084(a). The facts at the trial were largely stipulated, and the sole issue on Landmesser's appeal is whether the district court properly denied his motion to suppress intercepted wire communications.

Landmesser claims that the wiretap evidence should have been suppressed because the application for the order authorizing electronic surveillance did not contain a full and complete statement of the adequacy of other investigatory procedures, as required by 18 U.S.C. § 2518(1)(c); because the application was not made upon oath or affirmation as required by 18 U.S.C. § 2518(1); and

because appellant did not receive inventory notice of the wiretap within the requisite time period as required by 18 U.S.C. § 2518(8)(d). We affirm.

## I. ADEQUACY OF OTHER INVESTIGATORY PROCEDURES

Section 2518(1)(c) requires the application for an order to contain

> . . . a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried, or to be too dangerous.

Appellant vigorously asserts that the government's compliance with this demand is to be measured by the adequacy of paragraph 21 of the affidavit of F.B.I. Special Agent John R. Morello, which contains the following representations:

> 21. Interception of communications requested herein are necessary in order to identify the various co-conspirators and to learn the full scale illegal gambling business. Normal investigative techniques such as surveillances, reviews of telephone records and interviews have been tried without success and reasonably appear to be unlikely to succeed if further tried. Surveillances and interviews of potential witnesses have failed to provide evidence necessary to sustain convictions of Paul Robert Rhodes, Kenneth Raymond Votteler and others for violations of Title 18, Sections 371 and 1955, United States Code. The execution of search warrants on the persons and premises listed in the foregoing paragraphs would be unlikely to provide the evidence necessary to sustain successful prosecution under these statutes. My previous investigations have revealed that bookmakers normally maintain sketchy, if any, records and frequently code the information contained in their records and if they have the opportunity, they will destroy the records. Even if seized, the records would be unlikely to provide the specific evidence necessary to show the extent of the illegal gambling business

and the full degree of participation in the business by Paul Robert Rhodes, Kenneth Raymond Votteler and others. Witnesses interviewed concerning the illegal gambling activities being conducted by Paul Robert Rhodes, Kenneth Raymond Votteler and others have failed to provide specific evidence of the violation because the witnesses are hesitant to discuss their knowledge of the gambling operation for fear of reprisal against them by Rhodes, Votteler and others. Informants CS–1, CS–2 and CS–3 have refused to testify for fear of physical and financial reprisals against them by Rhodes, Votteler and others.

> For the reasons set forth above, the only reasonable method of developing the necessary evidence of violations committed by the above named individuals and others whose identities are unknown, is to intercept wire communications of Paul Robert Rhodes, Kenneth Raymond Votteler and others to and from the telephones described above.

The foregoing paragraph, appellant urges, is wholly conclusory and consists only of boiler-plate generalizations. He places heavy reliance upon *United States v. Kalustian*, 529 F.2d 585 (9th Cir. 1975). He complains that the affidavits in each case are of comparable vagueness and properly subject to the observation of the court in *Kalustian* that:

> The affidavit does not enlighten us as to why this gambling case presented any investigative problems which were distinguishable in nature or degree from any other gambling case. In effect the Government's position is that all gambling conspiracies are tough to crack, so the government need show only the probability that illegal gambling is afoot to justify electronic surveillance. Title III does not support that view.

*United States v. Kalustian, supra*, at 589.

██ The language of § 2518(1)(c) is "simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v.*

*Kahn*, 415 U.S. 143, 153, n. 12, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974). "These procedures were not to be routinely employed as the initial step in criminal investigation." *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 1827, 40 L.Ed.2d 341 (1974). At the same time the purpose "is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir. 1974), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774. Nor need a wiretap be used only as a last resort. *United States v. Kerrigan*, 514 F.2d 35, 38 (9th Cir. 1975), *cert. denied*, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249. Rather the Congress intended that the showing envisioned by § 2518(1)(c) be tested "in a practical and common sense fashion." S.Rep. No. 1097, 1968 U.S.Code Cong. & Ad.News, p. 2190.

Two circuits have held that "considerable discretion" rests with the issuing judge in deciding whether other investigative methods might be successfully employed. *United States v. Smith*, 519 F.2d 516, 518 (9th Cir. 1975); *United States v. Daly*, 535 F.2d 434, 438 (8th Cir. 1976). The Third Circuit, in *United States v. Armocida*, 515 F.2d 29, 38 (3rd Cir. 1975), observed without further discussion that the only requirement is that there be a "factual predicate" in the affidavit. The Seventh Circuit in *United States v. Anderson*, 542 F.2d 428, 431 (7th Cir. 1976), has held that the "government's burden of establishing compliance with [subsection 2518(1)(c)] is not great." Accord, *Armocida, supra*. In *United States v. Woods*, 544 F.2d 242, 257 (6th Cir. 1976), we set out without discussion the pertinent portion of an affidavit and held its language sufficient.

In *United States v. Steinberg*, 525 F.2d 1126 (2d Cir. 1975), the court was faced with language in an affidavit which would appear to be even more conclusory than that in *Kalustian*. While acknowledging that more information should have been included, the Second Circuit nevertheless recognized the difficulty in proving a negative, and observed "[that] wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." *United States v. Steinberg, supra*, at 1130. To like effect, see *United States v. Bobo*, 477 F.2d 974 (4th Cir. 1973), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 774. *United States v. Daly*, 535 F.2d 434 (8th Cir. 1976); *In re Dunn*, 507 F.2d 195 (1st Cir. 1974).

While the prior experience of investigative officers is indeed relevant in determining whether other investigative procedures are unlikely to succeed if tried, a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand would be, in our view, an inadequate compliance with the statute. We agree with the Eighth Circuit that "the mere fact that the affidavit before us rested *in part* on statements that would be equally applicable to almost any gambling case does not render the affidavit insufficient." *United States v. Matya*, 541 F.2d 741, 745 (1976), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (emphasis in original). What is required in addition, however, is information about particular facts of the case at hand which would indicate that wiretaps are not being "routinely employed as the initial step in criminal investigation." *Giordano, supra*, 416 U.S. at 515, 94 S.Ct. at 1827. See also, *United States v. Vento*, 533 F.2d 838, 850 n. 19 (3rd Cir. 1976).

Paragraph 21 of the Morello affidavit, taken by itself, runs perilously close to the generalized conclusions condemned in *Kalustian*. We do not believe, however, that we are required to read the paragraph in isolation from the remainder of the affidavit which was before the magistrate at the time the application was made. Paragraph 21 read in conjunction with the preceding twenty paragraphs of Morello's affidavit and the sworn application of United States Attorney Long provided the magistrate with a detailed outline of the activities which led to the application and thus

furnished an ample factual background to support the more conclusory allegations in paragraph 21. We do not see why, in approaching the statutory requirement in a practical and common sense fashion, the magistrate should base his decision in this regard upon less than the entire application. So viewed, it is fully adequate, for the other allegations gave him the ample opportunity to understand just what witnesses were involved, which ones were confidential informers, what they knew and what they did not know, and what their relationship to the case and to the defendants was. From the very specific allegations, it was well within the province of the magistrate to conclude that the statutory requirement had been met.

## II. REQUIREMENT OF OATH OR AFFIRMATION

■ Section 2518(1) provides that

Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction . . .

The application for the wiretap here is signed and sworn to by a United States Attorney. Accompanying the application and specifically incorporated by reference therein is the affidavit of Special Agent Morello. Morello's affidavit specifically refers to and incorporates an "affidavit" by Special Agent Harold S. Harrison, Jr. for the apparent purpose of complying with the provisions of Section 2518(1)(e) requiring a full statement about previous applications for the intercept of communications of the same person. Harrison's statement, however, while attached to the Morello and Long affidavits, is itself unsigned and unsworn. It is for this reason that appellant claims that the application itself is not upon oath or affirmation as required by the statute. We find this claim to be wholly without merit. The application itself was properly signed and sworn to by a properly authorized United States Attorney before a United States District Judge. Because that application specifically incorporates both the Morello and Harrison statements, it is in our view immaterial whether the latter were also made upon oath or affirmation. We see no difference between this method and the incorporation of the same facts as hearsay in the application itself. Harrison's status as a Special Agent for the F.B.I. confers sufficient indicia of reliability to warrant the inference that the hearsay evidence was credible.

## III. SERVICE OF INVENTORY NOTICE

■ Finally, appellant claims that suppression of the wiretap evidence is required because of a purported violation of § 2518(8)(d) which requires the service of an inventory notice within ninety days after the termination of the period of the wiretap authorization order. Landmesser's name was included in the inventory furnished by the government to the court following completion of the wiretap. The district court ordered service of notice on March 12, 1975 to a number of people including Landmesser. This order is admittedly within ninety days of the termination of the intercept. However, an error in Landmesser's address resulted in that notice not actually being received by him. On its own motion, an ex parte order was later entered by the district court and effectively served upon Landmesser approximately 75 days prior to the original day scheduled for trial. Because the latter order was issued more than 90 days after the termination of the wiretap, Landmesser claims that there was a fatal noncompliance with the statute.

Heavy reliance is placed by Landmesser upon the decision of this circuit in *United States v. Donovan*, 513 F.2d 337 (6th Cir. 1975). There defendants Merlo and Lauer, although not named in the wiretap application but discovered and identified by the government during the course of interceptions, were omitted from the proposed order submitted to the district court. A majority of the court found that the failure to notify Merlo and Lauer was fatal to the admissibility of the evidence gained by the wiretaps. The Supreme Court reversed. *Unit-*

*ed States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). While it recognized that a violation of the statute did occur in the government's failure to provide the district judge with a complete list of identifiable persons who had been subject to the wiretap and while the statutory requirement of notice was undoubtedly important, the Supreme Court found nothing in the legislative history suggesting that Congress intended the requirement to play "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *Donovan, supra,* at 437, 97 S.Ct. at 673, quoting *United States v. Chavez,* 416 U.S. 562 at 578, 94 S.Ct. 1849, 40 L.Ed.2d 380. Suppression of the evidence was therefore unwarranted.

There is nothing in the record here to suggest any bad faith by the government in the abortive attempt to serve notice on Landmesser at the improper address nor is there any showing of any actual prejudice. *See, Donovan, supra,* 429 U.S. at 436 n. 23, 439 n. 26, 97 S.Ct. 658. Under such circumstances we need not determine whether a good faith mailing of the notice to an incorrect address is even a violation of the statute. Even if we were to hold that the government's failure to serve Landmesser the inventory notice ordered by the district court was a violation of § 2518(8)(d), this violation would not justify suppression of the intercepted communications any more than the violations considered in *Donovan* justified suppression of the evidence challenged in that case.

Affirmed.