836 F.2d 551
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Vito Peter PARISI, Nove J. Tocco, David Carl Smith, James
Joseph KARALLA, Defendants-Appellants.
 Nos. 86-2097, 86-2121, 86-2128, 86-2181.
 United States Court of Appeals, Sixth Circuit.
 Dec. 24, 1987.
 
 Before ENGEL, MERRITT, and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The four defendants-appellants were indicted on various federal charges related to cocaine distribution. The appellants made motions to suppress three categories of evidence: 1) evidence obtained as a result of wiretapping authorized under 18 U.S.C. Sec. 2516 (1970 & 1987 Supp.); 2) evidence seized from defendant Smith's home; and 3) evidence, including statements, obtained pursuant to a stop of a car driven by defendant Parisi. The motion to suppress the evidence seized from appellant Smith's home was partially granted, and the other motions were denied by the United States District Court for The Eastern District of Michigan. The appellants entered conditional guilty pleas pursuant to Fed.R.Crim.P. 11(a)(2), thereby preserving their right to appeal the district court's denial of the motions to suppress the evidence. We affirm the district court's orders denying appellants' motions.
 
 
 2
 The Drug Enforcement Administration (DEA) began its investigation in this case in November 1984. At that time an undercover DEA agent was introduced to, and made some cocaine purchases from, Frank Buonbrisco. Buonbrisco, in turn, introduced the agent to his supplier, appellant Karalla. After making several cocaine purchases from Karalla, the agent became interested in locating Karalla's supplier. Based on the affidavit of John O'Rourke, a DEA special agent, judicial authorization to electronically monitor Karalla's phone was obtained on April 12, 1985, and the order was extended on May 11, 1985.
 
 
 3
 Parisi and Smith were arrested as a result of surveillance and information obtained through the "tap" of Karalla's telephone. In May 1985, conversations on that line revealed that drugs were going to be purchased in Orlando, Florida, and transported to Detroit, Michigan. Appellants Smith, Tocco, and Karalla, were identified in the conversations as persons having an interest in the shipment. Specifically, on May 6th or 7th, the drug transaction was discussed in intercepted phone conversations. On May 14, 1985, Karalla was seen in an Orlando airport. On that same day, he and a woman arrived at the Detroit Metropolitan Airport where they met Brent Karl Jacob, a defendant below, but not a party to this appeal. The three were observed visiting various Detroit bars and later a motel.
 
 
 4
 The next morning, Karalla was seen leaving the motel and observed arriving at his home at 11:00 a.m. Between 11:00 a.m. and 1:55 p.m., Karalla engaged in "tapped" phone conversations with Smith and Tocco in which it was indicated that Smith would meet an unknown source who was driving the drugs up from Florida. Agents began to look for familiar vehicles, including a white Chrysler New Yorker they knew was usually driven by Tocco, which had been offered for use in a previous drug-related trip from Florida. At 2:00 p.m., Officer Tishuck saw Smith and a man, later identified as Parisi, standing next to the white Chrysler outside Smith's residence. Parisi went to the car's trunk but moved away when an unmarked police cruiser drove past. Then, Parisi went back to the trunk, removed a duffel bag, and Smith and Parisi entered Smith's residence.
 
 
 5
 At around 3:00 p.m., Parisi left Smith's residence, returned the duffel bag to the trunk of the Chrysler, and drove away. Shortly thereafter, he was stopped in a "boxing" maneuver, executed by several police vehicles, approached by officers with their firearms drawn, ordered out of the car, frisked, and advised of his constitutional rights. Thereafter, in response to agents' questions, Parisi indicated that drugs were inside the trunk of the Chrysler and allowed agents to search the trunk. Cocaine was found.
 
 
 6
 Meanwhile, Smith's residence was still under surveillance. At 4:00 p.m., a white female, later identified as Mrs. Smith, left the residence and drove away. She was pulled over by agents and detained pending the issuance of the warrant to search her residence. Agent Wade became concerned that the occupants of Smith's residence might become suspicious about Parisi's and Mrs. Smith's continued absence and destroy any drugs inside the premises. For that reason, at 4:50 p.m., Officer Richie and the two agents went to the front door of the Smith residence, entered the house, and gathered all of the occupants into the living room. They were told that they were suspected of narcotic offenses and that a search warrant was being issued for the premises.
 
 
 7
 At 5:20 p.m., a search warrant authorizing the search of Smith's residence for "controlled substances," was issued. Agent O'Rourke phoned Officer Richie at Smith's residence to inform him that the warrant had been issued. O'Rourke told Richie that the agents were to search for controlled substances and other items related to the conspiracy. Smith was again read his Miranda rights. He did not ask for an attorney or assert his right to remain silent. Then, in response to questions asked by the agents, Smith showed Agent Wade the location of the cocaine in his basement. Additional items, such as a phone book, pictures, and income tax returns, were also seized from the residence. The district court suppressed these items since their seizure was outside the scope of the warrant, but refused to suppress the cocaine that had been seized.
 
 
 8
 Appellant Karalla was convicted of one count of distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1) (1981), and conspiring to distribute cocaine in violation of 21 U.S.C. Sec. 846 (1981). Appellant Tocco was convicted on a conspiracy count. Appellants Smith and Parisi were each convicted of one count of possessing cocaine with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1).
 
 I.
 
 9
 Necessity for the Initial Order Authorizing Electronic Surveillance
 
 
 10
 Wiretapping may be authorized for use in the investigation of specific federal crimes such as those related to cocaine distribution. 18 U.S.C. Sec. 2516(1)(e), (g) (1970 & 1987 Supp.). An application for the authorization of electronic surveillance must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Sec. 2518(1)(c) (1970 & 1987 Supp.). If an application meets the procedural requirements, a judge may authorize wiretapping if "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Sec. 2518(3)(c) (1970 & 1987 Supp.). Thus, wiretapping can only be authorized upon a showing of necessity by the government.
 
 
 11
 This court's standard of review of the issuing court's determination that necessity existed was fully addressed in United States v. Landmesser, 553 F.2d 17 (6th Cir.), cert. denied, 434 U.S. 855 (1977). In that case, this court stated:
 
 
 12
 Two circuits have held that "considerable discretion" rests with the issuing judge in deciding whether other investigative methods might be successfully employed. United States v. Smith, 519 F.2d 516, 518 (9th Cir.1975); United States v. Daly, 535 F.2d 434, 438 (8th Cir.1976). The Third Circuit in United States v. Armocida, 515 F.2d 29, 38 (3rd Cir.1975), observed without further discussion that the only requirement is that there be a "factual predicate" in the affidavit. The Seventh Circuit in United States v. Anderson, 542 F.2d 428, 431 (7th Cir.1976), has held that the "government's burden of establishing compliance with [subsection 2518(1)(c) ] is not great." Accord, Armocida, supra. In United States v. Woods, 544 F.2d 242, 257 (6th Cir.1976), we set out without discussion the pertinent portion of an affidavit and held its language sufficient.
 
 
 13
 Id. at 20. Therefore, our first task then is to examine, in accordance with Landmesser, the facts asserted in Agent O'Rourke's affidavit in support of the initial application for authorization to wiretap Karalla's phone. When analyzing the affidavit, the focus is on facts showing that alternative investigative means have been tried unsuccessfully or would be futile to try, or facts indicating that alternatives are unreasonably dangerous. 18 U.S.C. Sec. 2518(1)(c).
 
 
 14
 Clearly, wiretapping is "not to be routinely employed as the initial step in criminal investigation." Landmesser, 553 F.2d at 20 (citing, United States v. Giordano, 416 U.S. 505, 515 (1974)). In his affidavit, O'Rourke states that normal investigative techniques "have been successful insofar as the investigation relates to [Karalla]." However, with respect to locating the storage place of the cocaine and Karalla's source, the affidavit asserts that wiretapping was needed. Based on these statements, appellants contend that wiretapping was being used as the "initial step" to investigate Karalla's source and the entire operation. The government responds, and we agree, that investigation of the entire operation, not just Karalla, began in November 1984. Also, from that date until the order authorizing wiretapping on April 12, 1985, the government had tried alternative investigative procedures, including use of a confidential informant, and physical surveillance.
 
 
 15
 Appellants next contend that O'Rourke's affidavit did not adequately justify the failure to pursue available, feasible alternatives. The affidavit describes physical surveillance as futile since it would be difficult to determine the character and purposes of those observed with Karalla, and impossible to ascertain the suspect of their conversations. The affidavit also states that most of Karalla's drug transactions are conducted by telephone. This circuit has recognized that "wiretapping is particularly appropriate when the telephone is routinely relied on to conduct the criminal enterprise under investigation." Landmesser, 553 F.2d at 20. Additionally, the affidavit states that the use of a search warrant would not be feasible since the location of the place where the drugs are stored is unknown.
 
 
 16
 Next, the affidavit described the continued use of the undercover agent who had been introduced to Karalla as both futile and dangerous. Affiant O'Rourke stated that "based on his experience in investigating illegal narcotics operations further infiltration of this criminal organization by this undercover agent would be extremely difficult, if not impossible, and in any extent extremely dangerous." Agent O'Rourke's opinion as to the likely danger involved, based on the facts described earlier in his affidavit and on his prior experience, is sufficient to justify the government's decision not to further utilize undercover agents. When danger to human life is involved, as with the infiltration of a drug operation by an undercover agent, we think the issuing court's deference to the opinion of one close to the situation is appropriate.
 
 
 17
 Lastly, the affidavit states that an investigation through the use of a federal grand jury would be futile for several reasons, based on the general nature of narcotics operations. Appellants argue that Landmesser deems this inappropriate. In Landmesser this court stated:
 
 
 18
 While the prior experience of investigative officers is indeed relevant in determining whether other investigative procedures are unlikely to succeed if tried, a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand would be, in our view, an inadequate compliance with the statute.
 
 
 19
 553 F.2d at 20 (emphasis added). We interpret O'Rourke's statements describing why narcotics operations are hard to investigate through a grand jury as implicitly stating that the described reasons are believed by the affiant to exist in this particular case. Additionally, we reject appellant's claim that offers of immunity could be successfully used in conjunction with the grand jury. The government is not required to absolve some persons of criminal liability in order to gather evidence on the criminal activities of others. Therefore, we find that the government adequately met its burden, pursuant to the necessity requirement, of showing the futility or dangerousness in this case, of the feasible alternatives to wiretapping.
 
 II.
 
 20
 May 11, 1985, Order Extending the Authorization of
 
 Electronic Surveillance
 
 21
 Appellants also seek to suppress evidence obtained pursuant to an order made on May 11, 1985, extending the original wiretap authorization. An order authorizing wiretapping terminates upon the achievement of its objective, 18 U.S.C. Sec. 2518(5), an event which appellants argue had occurred before the extension was granted. The first wiretapping produced the names of twenty-one others, including Karalla's supplier. Thus, the appellants argue that there was little left to be discovered. However, we think that the purpose of the original wiretapping order had not be satisfied. The storage place of the cocaine had not been located and the extent of the participation of those within the conspiracy was not yet clear.
 
 
 22
 Additionally, appellants argue that the government failed to meet the necessity requirement with respect to the order extending wiretap authorization. 18 U.S.C. Sec. 2518(5), (1)(c). The affidavit in support of the extension stated that the necessity was the same as for the original order. Additionally, it contained facts indicating that the identity of the confidential informant and the undercover agent were now known or suspected by Karalla. Thus, undercover infiltration was no longer an alternative. However, the need for extension of an order authorizing wiretapping must be evaluated in light of the informaztion obtained pursuant to the first order. 18 U.S.C. Sec. 2518(1)(f). Concededly, at the time the extension application was made, Karalla's source had been identified, and several others involved had been discovered. However, as we have observed, the storage places of the cocaine remained unknown, and the extent of the participation of those involved in the conspiracy was unclear. That being so, the necessity for the initial order remained sufficient to establish that the necessity still existed. Therefore, we find that the issuing court properly extended the order authorizing electronic surveillance.
 
 III.
 Search Of Appellant Smith's Residence
 
 23
 The district court excluded items seized from appellant Smith's home which were outside the scope of the warrant authorizing the search. However, Smith contends that cocaine seized from his home, clearly within the warrant's scope, should also have been excluded because the search was invalid on two grounds: 1) the search warrant affidavit contained false and misleading information, and 2) the agents' warrantless entry into Smith's home resulted in an unlawful general search. We address these arguments in turn.
 
 A.
 Sufficiency of the Affidavit
 
 24
 In the district court, Smith sought a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), based on his assertion that the search warrant affidavit contained false and misleading information or omissions. Although the district court failed to address this issue, we have decided to address it on this appeal rather than remand. To sustain a Franks motion, the omissions or misrepresentations must be proven to have been made by an affiant who entertained serious doubts as to their truthfulness. Franks, 438 U.S. at 171. Additionally, it must be established that the statements and questions were essential to the magistrate's finding of probable cause. Id. at 171-72.
 
 
 25
 Although Smith claims that the affidavit was false and misleading in five ways, it is not necessary to discuss all five. Three were not raised in connection with the Franks motion below and thus will not be entertained in the first instance by this court. Of the remaining two arguments, Smith first claims that Parisi never told the agents that there were drugs in the trunk of the Chrysler. We must accept the trial court's finding to the contrary unless it is shown to be clearly erroneous. Parisi's testimony that he did not make this statement was contradicted by the agents' testimony that he did. The trial court was required to resolve the conflict, and did so. It's conclusion has not been shown to be clearly erroneous.
 
 
 26
 Smith's remaining argument is that the affiant failed to state that the wiretapping order was obtained to investigate gambling as well as drug activities. Thus, Smith argues some of the conversations may have been construed by the magistrate to be drug-related when they actually referred to gambling. There was no showing of intent to mislead the magistrate or that the affiant had serious doubts as to the truthfulness of the statements without the omitted material. Also, there is no showing that this alone would have changed the magistrate's decision as to the existence of probable cause to search Smith's home. Smith bears the burden of proof on a Franks motion and has not met this burden.
 
 B.
 The General Search Argument
 
 27
 Smith contends that the agents' initial warrantless entry into his residence and their later seizure of items outside the scope of the warrant transformed the search into a general search thus mandating the exclusion of all evidence obtained, even evidence within the warrant's scope. It is clear that the agents' initial entry was warrantless. The district court specifically found that no seizures took place in connection with the warrantless entry. The Supreme Court has held that an initial warrantless entry does not affect the admissibility of evidence later seized pursuant to a warrant, if information obtained in the warrantless entry is not used to obtain the warrant. United States v. Segura, 468 U.S. 796, 814 (1984). Thus, it is clear that the warrantless entry alone does not justify suppression of the cocaine seized from Smith's home.
 
 
 28
 However, Smith argues that this warrantless entry coupled with the later seizure of items outside the scope of the warrant constituted a general search requiring the suppression of all the evidence, including that covered by the warrant. In United States v. Lambert, this court discussed the nature of seizures which exceed the scope of the warrant. 771 F.2d 83, 93 (6th Cir.), cert. denied, 474 U.S. 1034 (1985). In that case, this court stated that the seizure of items outside the scope of a warrant will not constitute a general search mandating exclusion of items seized pursuant to the warrant absent "flagrant disregard" of the search warrant's limitations. Id. The district court specifically found that there was no such flagrant disregard and the record fully justifies that determination by the district court. More egregious behavior on the part of the government must be shown to constitute "flagrant disregard" mandating the exclusion of evidence within the scope of the warrant.
 
 V.
 
 29
 Evidence Seized Pursuant to the Stop of the White Chrysler
 
 
 30
 The district court held that the stop of the white Chrysler Parisi was driving was a constitutionally valid investigative stop based on reasonable suspicion of criminal activity. However, appellant Parisi contends the stop of the automobile was not an investigatory stop pursuant to Terry v. Ohio, 392 U.S. 1 (1968), but an arrest unsupported by probable cause. Thus, Parisi argues, the district court should have excluded statements he made and cocaine seized from the trunk of the car, after the stop. We make no determination as to whether the "boxing" maneuver used to pull the car over, the officers approach to the car with firearms drawn, and the frisk of Parisi for weapons, constituted a constitutional Terry stop because we find that there was probable cause to arrest Parisi. We therefore affirm the district court's denial of Parisi's motion to suppress the evidence obtained pursuant to the stop.
 
 
 31
 The fourth amendment requires an arrest to be supported by probable cause. Probable cause exists if "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, [to believe], in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." United States v. Hardnett, 804 F.2d 353, 355 (6th Cir.1986), cert. denied, 107 S.Ct. 1318 (1987) (quoting, Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). The facts known prior to the stop of Parisi are sufficient to satisfy this standard. On May 15, 1985, he was seen driving up to Smith's house after intercepted conversations indicated that Smith was to meet someone delivering a shipment of drugs by car from Florida. The conversations to that effect took place in close temporal proximity to Parisi's arrival. Additionally, Parisi was driving a car belonging to Tocco, who was known from the intercepted conversations to have an interest in the shipments of drugs. Parisi was observed removing a duffel bag from the trunk of the car, taking it into Smith's house, and returning the bag to the trunk upon his departure. These facts are sufficient to establish probable cause to make a warrantless arrest.
 
 
 32
 For the above reaasons, we AFFIRM the district court's orders of August 5, 1986, and September 19, 1986, denying appellants' motions to suppress evidence.