**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1284n.06

No. 11-6353

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,      )
                                     )
          Plaintiff-Appellee,       )
                                     )
     v.                        )
                                     )
TOREE SIMS,               )
                                     )
          Defendant-Appellant.    )

**ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY

> **FILED**
>
> *Dec 12, 2012*
>
> LEONARD GREEN, Clerk

BEFORE: **CLAY and STRANCH, Circuit Judges; BELL, District Judge**[*]

**BELL, District Judge.** Defendant-Appellant Toree Sims appeals a district court order denying his motions to suppress wiretap evidence and to compel discovery. For the following reasons, we **AFFIRM**.

**BACKGROUND**

Detroit Drug Enforcement Agency ("DEA") agents began investigating a group known as the Black Mafia Family in November 2003. In May 2004, a judge authorized the DEA to intercept phone calls to and from Terry Flenory, who was believed to be the head of the Black Mafia Family. Agents intercepted multiple calls concerning the sale and

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

distribution of cocaine between Flenory and a man suspected to be Sims. On June 17, 2004, a driver for the organization was stopped by police on his way to Louisville. During a seach of the vehicle, the police recovered ten kilograms of cocaine and a cell phone with a record of a recent call to "Qiana Toree." The phone number listed for "Quiana Toree" was the same number used by the man believed to be Sims whose calls with Flenory had been intercepted by the DEA. The Detroit DEA notified the Louisville DEA about both the calls and the stop, and, as a result, Louisville DEA agents applied for court authority for a wiretap of the cell phone Sims used in the calls with Flenory.

The June 28, 2004, affidavit for the wiretap detailed the Detroit investigation and how that investigation had intercepted Sims's conversations with Flenory. It also discussed how a confidential source, SOI-9, told DEA agents he had bought cocaine from Sims in late 2003. A judge in the Western District of Kentucky issued an order authorizing the tap, and on July 30, this same judge ordered the tap to be extended an additional thirty days. Numerous calls concerning the sale and distribution of cocaine were intercepted, leading to a search of the home of Karen Johnson, Sims's girlfriend, where scales and drug ledgers were found, along with Black Mafia insignia. A grand jury indicted Sims on violations of 21 U.S.C. §§ 846 and 841(a)(1). Sims moved to suppress the evidence gathered with the wiretap and to compel the government to provide him with an unredacted copy of a wiretap affidavit from a separate

case. Both motions were denied, and following a jury trial, Sims was convicted. Sims timely appealed the denial of these motions.

## STANDARD OF REVIEW

When evaluating a decision on a motion to suppress a wiretap, the Court reviews the district court's findings of fact for clear error and questions of law *de novo*. *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002). In reviewing the validity of a wiretap order, the Court affords "great deference" to the issuing judge. *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000).

"A district court's decision on a discovery matter is reviewed for abuse of discretion." *United States v. Warshak*, 631 F.3d 266, 296 (6th Cir. 2010).

## ANALYSIS

### I. Wiretap

Sims alleges four errors in the district court's denial of his motion to suppress the wiretap: (1) the June 28 affidavit in support of the wiretap made an insufficient showing of necessity; (2) inconsistencies in this affidavit merited an evidentiary hearing; (3) this affidavit failed to establish probable cause; and (4) the July 30 affidavit in support of the extension of the wiretap failed to establish probable cause.

#### A. Necessity

3

The wiretap statute, 18 U.S.C. § 2518(1)(c), requires that "[e]ach application for an order authorizing or approving the interception of a wire . . . communication" include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." The reason for this "necessity" requirement is "to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime" and to prevent wiretapping from being "routinely employed as the initial step in criminal investigation." *United States v. Landmesser*, 553 F.2d 17, 19-20 (6th Cir. 1977) (quoted cases omitted). "All that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate." *United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988) (quoted case omitted).

Sims raises three reasons the district court committed error in finding that the necessity requirement was met: (a) the government used the tap as an initial investigation technique; (b) the affidavit failed to allege specific factual circumstances to support its conclusion that normal investigative techniques would be particularly ineffective for Sims; and (c) in a different case, a similar affidavit regarding Sims's co-conspirator, Reginald Rice, was found to have failed the necessity requirement. These arguments are not persuasive.

4

First, the affidavit clearly demonstrated that other techniques were used before the wiretap. The affidavit showed that the Louisville investigation of Sims existed before the Louisville DEA learned of the Detroit DEA's intercepted conversations of the person believed to be Sims. The affiant, DEA Agent Fitzgerald, disclosed in the affidavit that on February 9, 2004, SOI-9 had told agents that Sims sold ounce and kilogram quantities of cocaine. Moreover, during surveillance in February, DEA agents saw Sims enter a Cingular Wireless facility in Indiana. Agents served a subpoena on Cingular and obtained the records of telephone accounts in Sims's name. Subsequently, on April 8, 2004, agents obtained an order authorizing the installation of a pen register and a trap/trace device. Additionally, from mid-February until June, agents went to Sims's home numerous times to attempt a trash pull. This was significant evidence of an on-going investigation, and Sims's claims that the government did not have such an investigation devoted to Sims before the June call interceptions are unfounded.

Second, the June affidavit provided sufficient detail about the techniques the government did not attempt, despite Sims's claims about "boilerplate" language and paragraphs copied nearly verbatim from other affidavits used in different cases. "[T]he mere fact that the affidavit . . . rested in part on statements that would be equally applicable to almost any. . .case [of that variety] does not render the affidavit insufficient" provided that there is also "information about particular facts of the case at hand which would indicate that

wiretaps are not being routinely employed as the initial step in criminal investigation." *Landmesser*, 553 F.2d at 20 (quoted cases omitted). "Congress intended that the showing envisioned by § 2518(1)(c) be tested in a practical and common sense fashion." *Id.* (citation and quotation marks omitted). The June affidavit detailed the investigative techniques previously used in this case and included a thorough discussion of the reasons the affiant did not believe that specific unattempted investigative techniques – such as undercover agents, search warrants, tracking devices, grand jury subpoenas, and interviews of subjects – would be successful in this particular case.

Third, the affidavit in this case is distinguishable from the affidavit to which Sims refers. In *United States v. Rice*, 478 F.3d 704 (6th Cir. 2007), this Court upheld the district court's grant of a motion to suppress a wiretap. However, the district court in *Rice* determined that necessity was not shown because the affiant included a "reckless[]" "misleading statement" about the general ineffectiveness of physical surveillance – stating that members of the criminal organization in question routinely made threats of violence, carried firearms, and wore bullet-proof vests – despite providing no support that such a danger of violence pertained to physical surveillance of the specific target himself. 478 F.3d at 707-09. The district court further found that "[o]ther than some uncorroborated thoughts and opinions there is no evidence that any other investigative technique was ever used or even seriously considered." *Id.* (Citation and quotation marks omitted).

6

The key difference between *Rice* and the present case is that the affidavit here discussed multiple examples of actual investigative techniques that had already been used for Sims, such as the use of confidential sources, a pen register, trap and trace information, physical surveillance, attempts at trash pulls, and the interception of phone calls on Flenory's phone. The affidavit provided specific reasons why these already-used techniques were of limited value going forward. The government is not required to exhaust every avenue. *Landmesser*, 553 F.2d at 19-20. Accordingly, Sims's arguments that the government never discussed certain methods, such as developing a new source or using another suspect, Torian Vaughn, to obtain evidence against Sims, are not sufficient to undermine the district court's necessity finding.

The issuing judge is owed "great deference" in a review of the validity of a wiretap order. *Corrado*, 227 F.3d at 539. In light of that deference, and the affidavit's significant discussion of other investigative techniques previously used and their limitations going forward, the district court did not commit clear error in finding the necessity requirement satisfied.

## B. Evidentiary Hearing

Sims's second argument is that it was error for the district court to deny an evidentiary hearing after he made a sufficient preliminary showing of false or misleading representations. "[W]here the defendant makes a substantial preliminary showing that a false statement

7

knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). The same standard applies to warrants for wiretaps. *United States v. Giacalone*, 853 F.2d 470, 474-75 (6th Cir. 1988).

Sims depends on alleged contradictions in the affidavit. First, in paragraph 60, Agent Fitzgerald stated that a wiretap was necessary "to identify and prosecute the Organization's source(s) of supply." But in paragraph 58 he identified Sims as the "cell head for this distribution organization in the Louisville area, receiving cocaine from TERRANCE FLENORY," indicating he already knew Sims's source of supply. However, this is not an inconsistency. Paragraph 58 indicated that the sources in question were sources of supply in California and Texas from which unknown members of the organization obtained cocaine, not Sims's source of supply. The fact that the DEA knew that Sims received cocaine from Flenory did not undermine the DEA's goal of identifying sources, nor did it make that stated goal misleading.

Second, Sims points out that Agent Fitzgerald stated in paragraph 63 that the government would not be able to gather information by using a confidential source, but then also stated in paragraph 64 that the government already had a source, SOI-9, who claimed to have bought cocaine from Sims. Sims's argument takes the statements out of context.

8

These paragraphs explained that SOI-9 was no longer useful because (a) he had not bought cocaine from Sims for six months and (b) he was a lower-level distributor who could not possibly gather the high-level information investigators sought. Thus, Agent Fitzgerald's statement that the government could not gather the information it needed through the use of a confidential source was not misleading or contradictory.

Third, Sims highlights Agent Fitzgerald's statement in paragraph 67 that physical surveillance was unlikely to be useful, when the affidavit made it clear in paragraph 46 that the one time the government tried this technique (i.e. at the Cingular store) it succeeded in obtaining useful information. But these paragraphs stated that this physical surveillance, while useful in the one instance, had reached the ends of its usefulness. Notably, the affidavit specified that such surveillance did not provide information about the scope of the organization, information about the identity of co-conspirators or their roles, or information about customers or sources of supply.

Fourth, Sims alleges misrepresentations in regard to Agent Fitzgerald's interpretations in paragraph 49 of the words used in the conversations overheard. There is no basis for this allegation. The affidavit stated exactly what words were said and what Agent Fitzgerald's interpretation of those words was, based on his experience. The later confusion at trial over whether "pink slip" was said or "pink suit" (Sims's nickname) does not change the fact that the agents reasonably interpreted the phrasing, in conjunction with Sims saying he was

"done" and "about finished," as code that meant Sims was out of cocaine. The fact that these phrases could be interpreted as innocuous does not suggest that the agent misinterpreted them; the purpose of having a code is to talk about drugs using innocuous-sounding language.

Fifth, Sims again takes issue with the fact that some language used in the affidavits for the Detroit wiretaps was adopted nearly verbatim here. As discussed earlier, there is nothing wrong with this practice. Because the same operation was being run out of Detroit, it is reasonable that the surveillance techniques that were deemed not to be useful in regard to the cell leaders from Detroit would also be deemed non-useful for the same or similar reasons for Sims, the cell leader in Louisville.

Sixth, Sims points to paragraph 61 where Agent Fitzgerald stated his belief that it was "highly doubtful" that Sims was conducting cocaine distribution himself, and that it was more likely that Sims was managing and directing. He argues this contradicts paragraph 45 in which Agent Fitzgerald states that SOI-9 bought cocaine from Sims. These two paragraphs are not contradictory because they refer to different time periods. Paragraph 61 refers to Agent Fitzgerald's belief at the time the affidavit was written, June 28, 2004. Paragraph 45 referred to purchases allegedly made by an uncorroborated source several months prior.

Seventh, Sims claims paragraph 71 is misleading. In this paragraph, Agent Fitzgerald described the shortcomings of tracking devices. Sims compares this paragraph to a parallel paragraph in an affidavit for a wiretap from a different investigation, which also found that tracking devices would be unsuccessful. It is Sims's contention that because the other case noted that the suspect changed cars frequently (which Sims did not do), it was misleading for Agent Fitzgerald to reach the same conclusion in this case. Agent Fitzgerald's conclusion was not misleading. Agent Fitzgerald's conclusion that tracking devices would be unsuccessful "in this case" was supported by facts that did not include changing cars frequently.

Last, Sims alleges that paragraphs 60 and 68B of the July affidavit used for the wiretap extension are contradictory. In paragraph 60, Agent Fitzgerald stated that, based on numerous intercepted calls, Sims was continually receiving shipments of cocaine from Detroit. In 68B, Agent Fitzgerald stated that on one occasion Sims told members of his organization that he had not received a shipment for three to four weeks. These paragraphs are not contradictory because they are based on statements Sims made during intercepted calls. There is no evidence that Sims was telling the truth when he stated he had not received a shipment for a few weeks. Moreover, even if Sims had not received a shipment in a few weeks, the intercepted calls described in paragraphs 13 to 52 show that the organization continued to participate in drug distribution activities. Considered in light of the entire

11

affidavit (and considering the deference owed to the issuing judge), the recitations in paragraphs 60 and 68B are not contradictory or misleading.

In conclusion, none of the highlighted paragraphs in the affidavit were misleading nor do they evidence internal contradictions. Moreover, even if some of them were misleading, Sims has not shown that the other elements of the preliminary showing necessary for a *Franks* hearing are present; there is no evidence that Agent Fitzgerald made a false statement "knowingly and intentionally" or that any such statement was "necessary" on its own to the finding of probable cause. *See Franks*, 438 U.S. at 155-56. Thus, the district court did not commit clear error in refusing to grant an evidentiary hearing.

### C. Probable Cause - June Affidavit

Sims contends it was error for the district court to find that probable cause existed for the initial wiretap. "The basic standards for a wiretap are similar to those for a search warrant . . . . Under this standard, the question that must be decided in issuing a warrant is whether there is probable cause to believe that evidence of a crime will be uncovered." *Alfano*, 838 F.2d at 161-62.

The main basis for Sims's argument is that the cell phone was registered to Qiana Lawson not to Sims. However, as with code language, it is common for drug conspirators to register their phones under different names, and that fact cannot on its own defeat probable cause. The only probable cause necessary is that the phone itself is being used in connection

with an offense or commonly used by someone committing the offense. See *United States v. Giacalone*, 853 F.2d 470, 478 (6th Cir. 1988). There were many facts in the affidavit that supported a finding of probable cause that the phone was used in the drug conspiracy and that Sims was using it. These facts included: (a) information gathered from the Detroit wire, including conversations by an unknown male believed to be Sims; (b) Vaughn's cell-phone contact list which indicated the phone number in question belonged to Sims; (c) information from SOI-9 that Sims was involved in distributing cocaine; (d) detailed information from toll records and the pen register connecting Sims to the cocaine organization; and (e) over 200 calls using the phone in June 2004 to and from others known to be involved in the cocaine organization, including Flenory. Given all of these facts, and the deference owed to the issuing judge, it was not clear error for the district court to find probable cause.

### D. Probable Cause - July Affidavit

Sims also contests the probable cause finding for the extension of the wiretap. But his main justification is that this extension was tainted by the alleged insufficiency of the June affidavit. Moreover, the July affidavit showed that Sims used the telephone to discuss and carry out drug transactions. It also noted that although the calls already intercepted made it clear that drug transactions were going forward, it was still unclear at what locations these transactions would take place and with what people. Thus, the district court did not commit clear error in finding probable cause for the extension.

## II. Unredacted Affidavit from *Rice*

Last, Sims contends the district court erred by refusing to enter an order compelling the government to provide an unredacted affidavit that was submitted in *United States v. Rice*, No. 3:04-CR-83-R. Sims argues that this information was necessary for him to make the showing required to suppress the wiretap and/or have a *Franks* hearing. This request has no basis in any discovery rule. Federal Rule of Criminal Procedure 16(a)(1)(E)(i) makes documents discoverable that would be material to preparing a defense. Sims has made no such showing that this affidavit would be material. The *Rice* affidavit was not incorporated by reference in the affidavits in Sims's case, nor were any of the intercepted communications obtained from the *Rice* case included. Sims merely states that he should be able to see it because he was a target in that investigation. As the district court found, Sims merely "proposed a series of generalities based upon an unsubstantiated possibility." The district court conducted an *in camera* review of the unredacted affidavit and found nothing in it that was material to Sims's arguments. Given these facts, it cannot be said that the district court abused its discretion.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.